**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| EDARIEL MELENDEZ, | : | |
| | : | Civ. No. 18-8404 (KM) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| THE STATE OF NEW JERSEY, | : | |
| STEVEN JOHNSON, | : | |
| | : | |
| Respondents. | : | |

---

**KEVIN MCNULTY, U.S.D.J.**

I.      **INTRODUCTION**

Pro se petitioner Edariel Melendez, a state prisoner at New Jersey State Prison in

Trenton, New Jersey, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. DE 1.

For the reasons below, the petition is denied and a certificate of appealability shall not issue.

II.     **BACKGROUND**

A.  **Factual Background**[1]

Melendez's conviction arises out of his participation, along with codefendants Bryant Lee

and Monte Foster, in two gang-related murders.[2] *State v. Melendez*, No. A-3829-10T2, 2014 WL

2895091, at *1, (N.J. Super. Ct. App. Div. June 27, 2014). On direct appeal, the Appellate

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), this Court affords deference to the factual determinations of the State court.

[2] Melendez's first trial ended in a mistrial due to juror misconduct. *Melendez*, 2014 WL 2895091, at *1. Lee and Foster were tried separately from Melendez. *Id.* at *2. In its opinions, passages of which are quoted herein, the New Jersey Superior Court, Appellate Division, sometimes refers to Lee as B.L. and Foster as M.F.

Division summarized Melendez's criminal proceedings and the evidence underlying his

conviction as follows:

> [D]efendant is a member of the Crips gang. On the evening of November 11, 2007, in Elizabeth, another Crip, an individual known by the name of "Twin," was gunned down. Two days later, the first victims in the underlying matter, two thirteen-year-old boys, were struck by bullets, not aimed at them, as they headed home on their bicycles. One youth, E.H., was fatally injured, while the other youth, who was shot three times in the arm, calf, and thigh, survived. A third youth was uninjured. Two days after this shooting, a second shooting occurred. The victim, C.P., responded to his doorbell at 5:30 a.m. When he opened the door, he was fatally wounded. At the time, it was believed the shots were intended for an individual known as "Ka–Ka," the son of the tenant who leased the second-floor apartment from C.P.
>
> Law enforcement authorities launched an investigation during which a witness identified defendant as the black male seen running to the passenger side of an idling green Mercedes shortly after the first shooting.[3] Other witnesses reported to police that approximately one month later, at a Christmas Eve party, they saw defendant attempting to clean a weapon with ammonia. They asked defendant about it and he told them the gun had been used to kill the first victim, but that the shooting was a mistake; the shooter mistook the victim as the person who fatally wounded the Crips member the previous month.
>
> On February 6, 2008, in an unrelated matter, an Elizabeth homeowner, while evicting his tenant, K.G., discovered a box containing guns in K.G.'s apartment. The landlord contacted police, who determined, following an examination by a firearms expert, one of the guns was linked to the fatal shootings of E.H. and C.P. Police interviewed K.G., who stated he purchased the guns the previous month from a tall black male with dreadlocks, whom he did not know, but whom he recognized from the neighborhood. Police presented K.G. with a photo array from which he selected B.L.'s photograph as the person from whom he had purchased the guns. Police arrested defendant, B.L., and M.F., identified, during the investigation, as the driver of the vehicle from which defendant was seen alighting two days following the last shooting.
>
> . . .
>
> While awaiting trial, B.L. wrote letters to two individuals, E.S. and J.G., asking each to give the letters to K.G. The letters instructed K.G. to recant his statement about the gun transaction. In addition, the letter to J.G. asked him to convince other witnesses to recant statements they had given to police. These letters were

---

[3] "Further investigation revealed that the vehicle purportedly involved was a Chrysler, which had a body similar to a Mercedes. That vehicle was seen within days of the shootings and was being operated by Foster with [Melendez] as an occupant." *Melendez*, 2014 WL 2895091, at *1.

admitted into evidence over defendant's objection. The court also admitted, over defendant's objection, evidence of his gang affiliation and photos of tattoo marks on his body, depicting his gang affiliation.

*Melendez*, 2014 WL 2895091, at *1–2.

## B. Procedural History

Melendez was convicted, after a trial, of two counts first-degree murder and related offenses.[4] *State v. Melendez*, No. A-3940-15T1, 2017 WL 5617588, at *1 (N.J. Super. Ct. App. Div. Nov. 21, 2017). The trial court imposed two consecutive 40-year terms of imprisonment with an 85% period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43–7.2; two consecutive 7-year terms of imprisonment on Melendez's second-degree aggravated assault convictions, concurrent with the 4-year sentence he received on his weapons conviction; and a 4-year consecutive sentence for the hindering conviction. *Melendez*, 2017 WL 5617588, at *1. The aggregate sentence was 98 years with a 79.9–year period of parole ineligibility. *Id.*

The Appellate Division affirmed the conviction and sentence in June 2014, *Melendez*, 2014 WL 2895091; and Melendez's petition for certification was denied in December 2014, *State v. Melendez*, 103 A.3d 267 (N.J. 2014). Melendez petitioned for post-conviction relief ("PCR"), which the PCR court denied without a hearing in April 2016. *Melendez*, 2017 WL 5617588, at *2. The Appellate Division affirmed in November 2017, *id.*, and Melendez's petition for certification was denied in March 2018, *State v. Melendez*, 182 A.3d 375 (N.J. 2018).

Melendez filed this petition in April 2018. He argues that

(1) he was deprived of due process and a fair trial based on (a) the trial judge's alleged errors in admitting (i) evidence of Melendez's gang membership, (ii) codefendant letters, and

---

[4] Specifically, two counts of conspiracy to commit aggravated assault, multiple counts of second-degree aggravated assault, third-degree aggravated assault, fourth-degree aggravated assault, second-degree possession of a weapon for an unlawful purpose, third-degree unlawful possession of a weapon, and third-degree hindering apprehension. *Melendez*, 2017 WL 5617588, at *1.

(iii) pictures of Melendez's tattoos (grounds one, two, and four), and (b) the trial judge's alleged failure to provide a proper limiting instruction concerning Melendez's gang membership (ground three);

(2) he received ineffective assistance based on (a) trial counsel's failure to interview and prepare alibi witnesses, pursue a dismissal, and explore challenges to statements, plea agreements, and the sentencings of codefendants Lee and Foster, and (b) trial counsel's cumulative errors (grounds five, six, and seven); and

(3) his sentence was excessive (ground eight). DE 1 at 5–13.[5]

The State has filed an answer to the petition (DE 13), and Melendez has filed a reply (DE 17). This matter is therefore fully submitted and ready for decision.

## III.    LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996, the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas petitioner must establish entitlement to relief for each claim in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *Parker v. Matthews*, 567 U.S. 37, 40–41 (2012). District courts must be "highly deferential" to the determinations of state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

---

[5] Melendez labels each of his grounds for relief one through seven as follows: "Petitioner was denied his right under the Sixth and Fourteenth Amendments of the United States Constitution to effective assistance of counsel, due process of law and a fair trial guaranteed by the Constitution." DE 1 5–12. Therefore, I look to the supporting facts to decipher and reorganize the specific grounds for relief alleged. For example, only grounds five through seven include allegations of ineffective assistance. *Id.* at 9–12.

4

If the state courts have adjudicated a claim on the merits, the district court shall not grant a writ of habeas corpus unless that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is "clearly established" for these purposes if it is clearly expressed in "the holdings, as opposed to the dicta" of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id*. If a petitioner challenges an allegedly erroneous state court factual determination, that determination "shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The relevant state court decision for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). These deferential standards apply "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011).

## IV.    DISCUSSION

### A.  Grounds One, Two, Three, and Four

Melendez argues that the trial judge violated his due process right to a fair trial when he (i) erroneously admitted evidence of Melendez's gang membership (ground one), photographs of tattoos establishing his gang affiliation (ground four), and letters written by codefendant Lee (ground two); and (ii) failed to provide a proper limiting instruction concerning his gang

membership (ground three). DE 1 at 5–8. He argues further that the admission of Lee's

recantation letters violated his Sixth Amendment right to confrontation. *Id.* at 6. (*See* pp. 3–4 &

n.5, *supra*.) The last reasoned state court decision addressing these grounds for relief—the

Appellate Division's opinion on direct appeal—rejected Melendez's claims that admission of

this evidence was erroneous or unfair. *Melendez*, 2014 WL 2895091. As discussed below, I find

the court's decision as to each of these grounds for relief is not contrary to or an unreasonable

application of Supreme Court precedent or an unreasonable determination of the facts in light of

the evidence presented at trial. Accordingly, grounds one, two, three, and four provide no basis

for habeas relief.

      **1. Evidence of Gang Membership**

Melendez argues that the admission of evidence demonstrating his membership in the

Crips "had minimal relevance and the potential of tremendous prejudice." DE 17 at 12. The

Appellate Division held that the trial judge did not abuse his discretion in admitting this

evidence, subject to limiting instructions, because it was relevant to the State's theory—i.e., that

the shootings were committed in retaliation for the killing of another Crip—and that its

probativeness outweighed any prejudice to Melendez. *Melendez*, 2014 WL 2895091, at *4, *6.

State-court evidentiary rulings are not a basis for habeas relief unless the asserted error

rises to the level of a federal constitutional violation. *See Estelle v. McGuire*, 502 U.S. 62, 67–68

(1991); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does

not lie for errors of state law"). "[T]he Due Process Clause guarantees the fundamental elements

of fairness in a criminal trial." *Riggins v. Nevada*, 504 U.S. 127, 149 (1992). In the field of

criminal law, "the category of infractions that violate 'fundamental fairness' [is defined] very

narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of

Rights, the Due Process Clause has limited operation." *Medina v. California*, 505 U.S. 437, 443 (1992). To satisfy due process, Melendez's trial must have been fair, but it need not have been perfect. *United States v. Hasting*, 461 U.S. 499, 508–09 (1983) ("[T]here can be no such thing as an error-free, perfect trial, and [ ] the Constitution does not guarantee such a trial.").

The Appellate Division set forth the relevant state law and analyzed the trial court's evidentiary ruling on the gang membership evidence as follows:

> [Prior to admitting evidence of gang membership], the trial judge must apply the four-part test articulated in *State v. Cofield*, 127 N.J. 328 (1992). As applied here, the *Cofield* test requires that evidence of a defendant's gang membership be: (1) relevant to a material issue; (2) similar in kind and reasonably close in time to the offense charged; (3) clear and convincing; and (4) its probative value must not be outweighed by the apparent prejudice to a defendant in admitting such evidence. *Id.* at 338.
>
> The State's theory of the case was that the crimes were committed in retaliation for the killing of another Crips member. This theory was based upon testimony presented at trial from a number of witnesses. S.F. and B.G. testified that at a Christmas Eve party the month following the shootings, defendant told them that E.H.'s shooting had been a mistake, as the person who shot him mistakenly believed he was shooting at "Ka–Ka," Twin's rumored killer. Defendant also told them he fired the shot which fatally wounded C.P. He explained to the two women that "it was all [a] gang-related attempt to shoot Ka–Ka." S.L., Ka–Ka's mother and C.P.'s second-floor tenant, testified that on the morning of the shooting, Ka–Ka was at home, asleep in his bedroom.
>
> The trial judge, Joseph P. Perfilio, prior to admitting this evidence, engaged in a *Cofield* analysis and concluded the evidence of defendant's gang membership was relevant and its admission outweighed any prejudice to defendant resulting from its admission. We agree.
>
> Evidence is deemed relevant if it tends "to prove or disprove a fact of consequence to the determination of the action." N.J.R.E . 401. In relevance determinations, the analysis focuses on the "logical connection between the proffered evidence and a fact in issue." *Furst v. Moomjy, Inc.,* 182 N.J. 1, 15 (2004). Here, there was a logical connection between defendant's gang membership, the earlier killing of a fellow gang member and the subsequent shootings of E.H. and C.P. Defendant's statements at the Christmas Eve party that the shootings were gang-related was consistent with the evidence presented that E.H. was mistaken for a member of the rival gang because the shirt he was wearing at the time he was fatally wounded was red, and that Ka–Ka was a member of the rival Bloods gang, whose members were believed to have been

responsible for Twin's death. Further, these statements were made close in time to the shootings. Finally, the evidence of defendant's gang affiliation and the linkage between that affiliation and the victims' deaths was strong, supporting Judge Perfilio's ultimate conclusion that its probative value was outweighed by any prejudice to defendant by its admission.[6]

*Melendez*, 2014 WL 2895091, at *3–4.

The Appellate Division noted that the trial court held the appropriate N.J.R.E. 104 hearing to determine the admissibility of the evidence and analyzed the *Cofield* factors before permitting, "to a limited extent," the gang-affiliation testimony. *Melendez*, 2014 WL 2895091, at *6. The Appellate Division found that the record was clear that the shootings "were not independent of or unrelated to gang activity in which [Melendez] was fully involved. In fact, according to what [Melendez] told the two women at the Christmas Eve party, S.F. and B.G., E.H. was shot, not because he was mistaken for Ka–Ka in particular, but because he was wearing a red shirt and thought to be a Blood." *Id*. The Appellate Division—referring to the trial judge's remarks to prospective jurors and instructions to the jury regarding the proper use of the gang-membership evidence—further noted that "[r]epeated steps were taken to assure the proper use of this evidence." *Id.* at *4. The court concluded: "In short, the gang-affiliation testimony was directly probative of defendant's motive. As such, Judge Perfilio did not abuse his discretion in admitting this evidence." *Id.* at *6.

This conclusion was consistent with federal case law: "Federal courts have specifically held that gang membership is admissible to show motive for criminal

---

[6] This final sentence omits the word "not" before "outweighed by any prejudice to defendant." This is clearly inadvertent, as the trial judge very clearly did conclude that the probative value of the evidence of gang membership was outweighed by any prejudice to Melendez. *See* DE 13-21 at 12–13 (transcript of trial motions; *see* third paragraph of the quoted passage). More generally, such a conclusion is necessarily implied by the trial judge's bottom-line decision to admit the evidence.

activity." *Munoz v. Grace*, No. 05-4199, 2007 WL 2323134, at *13 (E.D. Pa. Aug. 10,

2007); *see United States v. Carter*, 410 F. App'x 549, 552–53 (3d Cir. 2011) ("gang-

affiliation evidence should be admitted only when it is solidly tied to some legitimate

purpose other than a showing of a propensity to criminal conduct such as . . . motive");

*Goodman v. Nogan*, No. 16-4591, 2019 WL 6271815, at *12 (D.N.J. Nov. 25, 2019)

("While the issue of a fact-finder hearing evidence of gang affiliation to establish motive

has not been addressed by the United States Supreme Court, other courts in this circuit

have considered the matter and found the evidence to be very probative of motive.");

*Reid v. Beard,* No. 04–2924, 2009 WL 2876206, at *6 (E.D. Pa. Sept. 2, 2009) (evidence

that petitioner was a member of the Junior Black Mafia was relevant to establish

conspiracy and its admission did not violate the Constitution); *Munoz*, 2007 WL

2323134, at *13 ("[E]vidence of petitioner's gang membership was highly probative on

the issue of motive to commit murder" due to "evidence that petitioner, a Latin Kings

gang member, was ordered by his gang superior to shoot a member of a rival gang in

retaliation for previous gang-related violence."); *Mitchell v. Klem*, No. 06-945, 2007 WL

1877956, at *5 (W.D. Pa. June 29, 2007) ("Mitchell argues that the trial court erred by

admitting evidence of his gang membership. The state court's ruling, however, is clearly

consistent with federal law because it is probative of the motive issue.").

Courts have also found that there is no undue prejudice and no due process

violation where, and discussed in detail in section IV.A.3. below, the jury is given a

limiting instruction as to the proper use of gang-membership evidence, as was done here.

*See, e.g., Murray v. People of N.Y.*, No. 15-3555, 2017 WL 3704677, at *9 (E.D.N.Y.

Aug. 28, 2017) (no due process violation where "evidence of gang affiliation is

admissible to prove motive, and the trial court clearly instructed the jury that it could only consider such evidence for motive, not for propensity or as proof of guilt or innocence"); *United States v. Takahashi*, 205 F.3d 1161, 1165 (9th Cir. 2000) (rejecting claim that district court abused its discretion in admitting relevant gang-affiliation evidence, noting that the court gave a limiting instruction and minimized undue prejudice).

Melendez has not established that the evidence of his gang membership, considered in context, violated his right to a fair trial. The trial court drew a persuasive logical connection between Melendez's membership in the Crips gang, the earlier killing of a fellow Crip, and the subsequent retaliatory shootings. *Melendez*, 2014 WL 2895091, at *4. The state court found ample evidence of that connection, including evidence that E.H. was mistaken for a member of the rival Bloods gang because he was wearing a red shirt, and that Ka-Ka was a Blood, whose members were believed to have been responsible for Twin's death. The link between Melendez's gang affiliation and the victims' deaths was strong, thereby supporting the trial court's conclusion that the probative value of the evidence outweighed any prejudice to Melendez. *Id.*; *see also Windham v. Merkle*, 163 F.3d 1092, 1103–04 (9th Cir. 1998) (admission of gang evidence, while prejudicial, was important motive evidence and, therefore, did not violate petitioner's due process rights). And the trial court properly instructed the jury that such evidence was to be considered only for its proper purposes. *See* Section IV.A.3, *infra.*

Accordingly, having considered the trial court's thorough discussion and the evidence at Melendez's trial, I find that the state court's ruling was not an unreasonable determination of the facts in light of the evidence presented, and was neither contrary to, nor an unreasonable application of, clearly established federal law. Indeed, I fail to perceive any error or unfairness, let alone a due process violation. Habeas relief on this ground is denied.

### 2.    Photographs of Tattoos

Melendez contends that the trial court erred in admitting into evidence photographs of his tattoos depicting his gang affiliation. DE 1 at 8. The pictures depicted one tattoo on Melendez's back, which read "Hoodsta," and another on his arm, which read "Riddicc," a name Melendez used. *Melendez*, 2014 WL 2895091, at *7. At trial, the State's expert in gang practices and gang terminology explained that it was common among Crips to replace the letters "CK" with "CC" when writing a word or a name, because "CK" stands for "Crip Killer." *Id.* Melendez argues that because he "never denied being a Crip," there was no reason to admit the pictures; the pictures "did not prove or disprove any fact"; and there was "more than enough evidence to show that [he] was a Crip." DE 17 at 24 (citations and quotations omitted). DE 17 at 26. Melendez further asserts that presenting pictures of his gang-related tattoos "to the average juror, would only lead them to the conclusion that [Melendez] is committed to the gang and its mission [and] that he would go as far as committing murder for the gang." DE 17 at 26. Melendez contends that "[t]he prosecutor obviously saw it the same way, because he drilled the same point in his closing statement." *Id.*

The Appellate Division found that the trial judge did not abuse his discretion in admitting the photographs, *Melendez*, 2014 WL 2895091, at *4, analyzing the issue as follows:

> In permitting the pictures to be shown to the jury, the trial court reasoned that pursuant to *N.J.R.E.* 501(3), tattoos and other body markings are not considered testimonial. He further commented:
>
> > It also indicates in my view, at least, a person who gets tattoos on their body of these, you know, these indications of Crip membership shows how much or how intensely he is a Crip, I think.
> >
> > . . .
> >
> > I just don't see it as unduly prejudicial. I think he's admitting he's a Crip, according to the testimony of the other officers. So I think

11

for the purposes of this hearing that that is relevant and . . . not
unduly prejudicial.

. . .

We agree, as the trial court reasoned, the evidence of defendant's tattoos was
probative of the depth of defendant's affiliation with the Crips gang, which
corroborated other evidence of defendant's gang affiliation presented by the
witnesses who testified. Although defendant claims evidence of his gang
membership was not in dispute, he did not stipulate this fact before the jury. The
State bore the burden of proof in establishing defendant's culpability for the
crimes charged. The tattoos could be viewed as direct evidence of defendant's
gang affiliation. Therefore, the evidence was not cumulative nor unduly
prejudicial.

*Melendez*, 2014 WL 2895091, at *6–7.

The Appellate Division then addressed Melendez's argument related to the prosecutor's

comments. The court noted that as defense counsel did not object, the alleged misconduct was

reviewable for plain error. *Melendez*, 2014 WL 2895091, at *7. In finding no plain error, the

court quoted the challenged remarks and analyzed the claim as follows:

[D]efendant contends that by permitting the introduction of the tattoo
photographs, the court facilitated the following remarks from the prosecutor:

[T]here's photographs of his tattoos, and I mean, a lot of people
have tattoos, but a tattoo is a commitment, even in this day and
age. A tattoo says something.

If you're going to put hood stuff, you're going to put I'm a Crip on
your shoulder, it's a commitment. If you're going to spell your
name with two Cs on the end instead of as a Crip Killer with CK, it
says something. It's a commitment. It says something about you.

. . .

The prosecutor's remark, "it says something about you" may imply that
defendant's commitment to the Crips gang, as evidenced by the tattoos, meant he
was capable of murder. The jury, however, was repeatedly charged that
membership in a street gang was "not in itself illegal." Nor was the statement
repeated throughout the prosecutor's summation. Consequently, when measured
under the plain error standard, the comment was not so egregious as to have
denied defendant a fair trial. *State v. DiFrisco*, 137 *N.J.* 434, 476 (1994).

*Melendez*, 2014 WL 2895091, at *7–8.

The state court's determination on this issue was not an unreasonable application of clearly established federal law; federal courts have found gang-related tattoo evidence admissible to prove gang membership and not unfairly prejudicial. *See United States v. Rios*, 830 F.3d 403, 421 (6th Cir. 2016) ("Where other evidence suggests that members of a particular gang tend to have unique tattoos, gang-tattoo evidence helps to identify an individual as a member.").[7] Such evidence is particularly probative where, as here, the very motive for the killings arises from the defendant's commitment to, and affiliation with, a gang. Accordingly, habeas relief on this ground is denied.

To the extent Melendez brings a prosecutorial misconduct claim based on the prosecutor's remarks during summation, this ground for relief is also denied. When a prosecutor's remarks are challenged in habeas proceedings, "[t]he relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation marks and citation omitted). "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the

---

[7] *See also, e.g.*, *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) ("the evidence of Latin King . . . tattoos tended to establish gang membership or affiliation, and it was proper for the government to prove gang membership as part of the conspiracy); *Dilgerparks v. Montgomery*, No. 22-0749, 2022 WL 2910026, at *9 (C.D. Cal. June 17, 2022), *report and recommendation adopted*, 2022 WL 2905469 (C.D. Cal. July 22, 2022) (gang-related evidence, including white supremacist gang tattoos, admissible where "the gang-related evidence served as the basis for the prosecution's theory of the case" that petitioner "shot the victim because both the victim and his wife called him a Mexican, a racial misidentification that insulted his white supremacist identity"); *United States v. Ruibal*, 12-132, 2014 WL 198663, at *2 (W.D. Mich. Jan. 16, 2014) ("To the extent a tattoo evidences an individual defendant's affiliation with the Holland Latin Kings, the evidence may be prejudicial to the defendant's case, but only because of the legitimate probative force of the evidence in proving membership in the Holland Latin Kings. That kind of prejudice is not unfair. Defendants have not identified anything about tattoos generally or about their tattoos in particular that would be make them unfairly prejudicial in this case.").

severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

Here, upon review of the prosecutor's summation and in light of the strong evidence of guilt, I find the state court reasonably determined that the tattoo remarks were not so prejudicial as to deny Melendez due process. As the Appellate Division noted, the jury was repeatedly charged that "membership in a street gang was 'not in itself illegal.'" *Melendez*, 2014 WL 2895091, at *8. A review of those instructions, as well as the trial judge's comments to the prospective jurors about the proper use of gang evidence, is set forth in Part IV.A.3. below. It suffices for the present to observe that the Appellate Division reasonably found that those instructions, which the jury is presumed to have followed, were sufficient to mitigate any prejudicial effect. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *see also Dilgerparks v. Montgomery*, No. CV 22-0749 FLA (PVC), 2022 WL 2910026, at *9, *report and recommendation adopted*, 2022 WL 2905469 (C.D. Cal. July 22, 2022) ("[P]rior to opening statements, the jury was admonished generally not to allow bias or prejudice influence their factual determinations and it was specifically instructed to consider the gang evidence only on the issues of motive and credibility, and not as propensity evidence. Because we presume that the jury understood and followed those instructions, we conclude that the gang evidence and the prosecutor's comments about it . . . could not have had the inherently prejudicial effect attributed to it by [Petitioner].") (citation omitted). Accordingly, the Appellate Division's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law, and habeas relief on this ground is denied.

### 3. Limiting Jury Instructions

Melendez argues that the trial judge's "instructions to the jury, given only during the final charge, limiting the evidence of gang membership to the issue of motive, was insufficient given that this evidence should not have come in at all." DE 17 at 11. The premise of the objection—that the evidence should not have come in at all—I have already rejected. *See* Section IV.A.1 & 2, *supra*. Moreover, the Appellate Division properly found that the trial court's instruction was sufficient because it "clearly conveyed to the jury that evidence of [Melendez's] gang affiliation could not be considered only to show that he has a disposition or a tendency to do wrong and therefore must be guilty of the charges." *Id.* at *6 (quotations omitted).

"Questions related to jury charges are normally matters of state law and are not cognizable in federal habeas review." *Paulino v. Ortiz*, No. 03–4463, 2005 WL 2922369, at *4 (D.N.J. Nov. 4, 2005); *see also Estelle,* 502 U.S. at 71–72 ("the fact that [an] instruction is allegedly incorrect under state law is not a basis for habeas relief"). Habeas relief is thus available only "when the absence of an instruction, or a defective instruction, infects the entire trial with unfairness." *See Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007) (citation omitted). The petitioner must demonstrate that the failure to include the limiting instruction was prejudicial. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). This burden is "even greater than the showing required to establish plain error on direct appeal." *Id.* Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* "[U]nless [the error] had [a] substantial and injurious effect or influence in determining the jury's verdict," it is deemed harmless. *See Adamson v. Cathel*, 633 F.3d 248, 259 (3d Cir. 2011) (quoting *Fry v. Pliler*, 551 U.S. 112, 116 (2007)).

The Appellate Division, noting that "[r]epeated steps were taken to assure the proper use" of gang membership evidence, described the trial judge's remarks as follows:

> [P]rior to [the jurors] being empaneled, Judge Perfilio alerted prospective jurors that evidence of defendant's and other witnesses' gang membership would be presented during trial. He explained, in detail, the limited purpose for which this evidence would be considered. The judge also questioned each juror as to whether hearing such evidence would affect their ability to be fair and impartial:
>
>> [Y]ou may hear testimony that the defendant or other witnesses and persons mentioned in the course of the trial were members of various street gangs, namely the Bloods and the Crips. Membership in a street gang is not in itself illegal. Will the fact that such street gangs may be involved in this case impair your ability to be fair and impartial to the defendant or the Prosecution in this case?
>
> Prior to concluding the jury voir dire, Judge Perfilio remarked:
>
>> [T]here is a very limited purpose for me allowing [ ] the Prosecution to put in issues about membership in a street gang, and the limited purpose relates to motive and nothing else. And then it would be up to the jury to decide, number one, whether the person or persons were involved in a street gang and then, number two, whether they—the State has proved motive and nothing else.
>>
>> In other words, you couldn't use evidence of being in a street gang in any other way. In other words, you couldn't use it to either assume that somebody had a predisposition to commit a crime because they were in a street gang. It's limited, and the only reason I'm allowing it is it's limited to that purpose. The State wants to use that to prove motive. So with that being said, do you believe you would be unable to be fair and impartial with that limitation involved?
>
> Two jurors were excused after they indicated they could not be fair and impartial under the circumstances. Defense counsel used a peremptory challenge to remove another juror who "had some questions about street gangs," but ultimately indicated he could remain fair and impartial. The judge then re-instructed the jury that evidence of street gang membership could only be used for the narrow purpose of proving motive.

*Melendez*, 2014 WL 2895091, at *4–5.

All of the foregoing preceded the final jury charge, in which the trial judge reminded the jurors of the preliminary instructions and reiterated the limited purpose for which the jury could consider evidence of Melendez's gang membership:

> Now in the beginning of this case in the voir dire of the jury I went over gang membership and how that was to be used. The State has introduced evidence that the defendant was a member of a street gang[,] the Crips[,] and at the time of the charges alleged against him in the indictment.
>
> [Normally,] such evidence is not permitted under our rules of evidence. Our rules specifically exclude evidence that a defendant was a member of any group or organization when it is offered only to show that he has a disposition or a tendency to do wrong and therefore must be guilty of the charges.
>
> Before you can give any weight to this evidence, you must be satisfied that the defendant belonged to the street gang[,] the Crips. If you are not so satisfied, you may not consider it for any purpose.
>
> However, our rules do permit evidence of gang or group membership or organization membership when the evidence is used for certain specific, narrow purposes. In this case[,] the State has presented evidence of the gang membership, defendant's gang membership to prove the defendant's motive for the commission of the crimes alleged in the indictment.
>
> Specifically[,] the State alleges that the crimes alleged in the indictment were committed in retaliation for the murder of a member of the defendant's gang, the Crips, by a rival gang, the Bloods, the intended targets of the crimes.
>
> Whether this evidence does in fact demonstrate the defendant's motive for the commission of the crimes in the indictment is for you to decide. You may decide that the evidence does not demonstrate defendant's motive and is not helpful— helpful to you at all. In that case you must disregard the evidence.
>
> On the other hand, you may decide that the evidence does demonstrate defendant's motive and use it for that specific purpose alone.

*Melendez*, 2014 WL 2895091, at *5–6.

The Appellate Division rejected Melendez's argument that these instructions "were incomplete because Judge Perfilio failed to reiterate, verbatim, his earlier instruction to jurors that the jury could not consider the evidence 'to either assume that somebody had a predisposition to commit a crime because they were in a street gang.'"

*Id*. Rather, the Appellate Division found that "[t]he purpose for which this evidence could not be considered *was* reiterated to the jury, albeit not in the exact phraseology, which [Melendez] urges should have been used. The court's final instruction to the jury clearly conveyed to the jury that evidence of Melendez's gang affiliation could not be considered 'only to show that he has a disposition or a tendency to do wrong and therefore must be guilty of the charges.'" *Melendez*, 2014 WL 2895091, at *6 (emphasis added).

Melendez has failed to provide a basis to conclude that this limiting instruction was constitutionally inadequate. To be clear, the chief danger of unfairness would have been a predisposition, or "bad egg" theory. As set forth above, the trial court clearly, repeatedly, and forcefully instructed the jury that such a theory was not permissible, and that they could use evidence of gang membership only to establish motive. The Appellate Division reasonably determined that jurors are presumed to follow such instructions, and that the instructions were sufficient to forestall any potential prejudice. *See, e.g., Hernandez v. Runnels*, 357 F. App'x 745, 745–46 (9th Cir. 2009) ("[T]he trial court gave a proper limiting instruction to the jury, which we assume the jury properly followed and which mitigated the likelihood that the jury would draw an impermissible inference from the gang evidence."); *Muriel v. Madden*, No. 15-1353, 2017 WL 1404381, at *25 (C.D. Cal. Mar. 13, 2017), *report and recommendation adopted*, 2017 WL 1404304 (C.D. Cal. Apr. 18, 2017) ("The judge's instruction to the jury in Petitioner's case therefore minimized the threat of impermissible use of the evidence. Limiting instructions are not deemed any less effective when the evidence at issue relates to gang activity."). This ruling was not contrary to or an unreasonable application of Supreme Court precedent. Accordingly, habeas relief on this ground is denied.

### 4.  Codefendant Letters

Melendez argues that the trial judge improperly admitted letters written by codefendant Lee—wherein Lee instructed potential witnesses to recant their statements to the police—because the letters were inadmissible hearsay. DE 1 at 6. Melendez contends that the judge erred in finding that the letters were evidence of an ongoing conspiracy between Lee and Melendez because "[t]he two were already under arrest and no evidence was produced that they were in the same part of the jail or had any access to each other"; the State presented no evidence suggesting that the conspiracy continued after Melendez's arrest; and "[w]hile Lee's efforts to get all the witnesses to recant their statements might tangentially help Melendez, the effort was made to protect Lee," and thus, "[a]ny lessening of liability from [Melendez] was merely a by product of Lee's efforts to help himself." DE 17 at 16.

In rejecting these arguments, the Appellate Division reviewed state law regarding the hearsay exception for evidence in furtherance of a conspiracy and analyzed the issue as follows:

> Although statements made after the conspiratorial objective is complete are generally not admissible under the co-conspirator exception, a conspiracy may continue beyond the commission of the objective if "[s]tatements about past events are considered to be in furtherance of a conspiracy 'where the statements serve some current purpose, such as to promote cohesiveness, provide reassurance to a co-conspirator, or prompt one not a member of the conspiracy to respond in a way that furthers the goal of the conspiracy.'" *State v. Soto,* 340 N.J. Super. 47, 63 (App. Div.), *certif. denied,* 170 N.J. 209 (2001) (quoting *State v. Taccetta,* 301 N.J. Super. 227, 253 (App. Div.), *certif. denied,* 152 N.J. 187 (1997)). To introduce a statement under the co-conspirator exception to the hearsay rule, the State must meet the following conditions:
>
> > (1) the statement must have been made in furtherance of the conspiracy;
> >
> > (2) the statement must have been made during the course of the conspiracy; and
> >
> > (3) there must be evidence independent of the hearsay, of the existence of the conspiracy and defendant's relationship to it.

> [*State v. Savage*, 172 N.J. 374, 402 (2002) (citing *Phelps, supra,*
> 96 N.J. at 509–10.]

The State bears the burden of proving by a "fair preponderance of the evidence" that these prerequisites to admissibility have been met. *Phelps, supra,* 96 N.J. at 517.

In admitting the letters over defendant's objection, the trial court, relying upon *Savage, supra,* 172 N.J. at 374, *State v. Cherry,* 289 N.J. Super. 503 (App. Div. 1995), and *State v. Taccetta, supra,* 301 N.J. Super. at 227, stated:

> So with regard to this case and—the question is what is the underlying independent evidence that would support proof of the conspiracy exclusive of these letters, of the letters being offered? First of all, I will state that the most recent letter by [B.L.] to his girlfriend where he says, "I just talked to Riddicc. He said all of the girls is taking back their statements so that is good feel me. Got a good chance of coming home with that." That is evidence of the conspiracy.
>
> Additionally, the testimony that has so far been produced indicates that two people were involved in each of the shootings, two men, that the testimony was that the defendant and [B.L.] used the alleged getaway car where there was testimony by a number of young women at the party, statement that the defendant came to the party with a gun to clean it and hide it because it has a body on it. Used [sic] by the defendant continually at the party of the term "we" as to what happened . . . at each of the shootings. And then the coconspirator [B.L.] coming to the party to retrieve the gun that the defendant . . . according to the testimony, brought to the party to hide and to clean. Each of these items, especially all of them put together, is independent proof of a conspiracy between [B.L.] and [defendant].
>
> The conspiracy with regard to the statements in this case was furthered in the first letter where [B.L.] is telling KeKe [K.G.] he has to change his statement about who he bought the gun from. That is a statement of a coconspirator with regard to the weapon that was used in the shooting.
>
> The second letter, the first paragraph talks about "Me and Riddicc should be good with people taking back their statements. We need KeKe to do the same." I'm satisfied that is admissible for—as part of the statement of the coconspirator.

Defendant argues the State failed to provide evidence that defendant and B.L. were in a continuing conspiracy after their arrest such as being in close physical

proximity within the jail or having other kinds of access to each other. Defendant also argues that B.L. was acting entirely on his own to protect himself, and the fact that defendant would have benefited from the success of B.L.'s scheme did not implicate him in a conspiracy. However, by trying to convince potential witnesses to lie on the stand, Lee's statements did "serve some current purpose" to "prompt one not a member of the conspiracy to respond in a way that furthers the goal of the conspiracy." *Soto, supra,* 340 N.J. Super. at 63. Notably, at trial, K.G. denied he purchased the guns from B.L. and stated he could not remember who sold the guns to him. He also denied selecting B.L.'s photograph from the photo array. This evidence not only benefited B.L., but also benefited defendant, who witnesses testified was observed cleaning a gun, which defendant told the witnesses had been used in the shooting of E.H. the previous month. In short, the requirements for admission of the letters, set forth in *Savage, supra,* 172 N.J. at 395, were met and the court did not abuse its discretion in admitting the letters for the jury's consideration.

*Melendez*, 2014 WL 2895091, at *8–9.

The Confrontation Clause provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington* and its progeny, the Supreme Court held that the Confrontation Clause bars the admission of testimonial statements of witnesses absent from trial that are admitted to establish the truth of the matter asserted in the statement, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. 541 U.S. 36, 59, 60 n.9 (2004); *see also Davis v. Washington*, 547 U.S. 813, 823–24 (2006). In *Bruton v. United States*, the Supreme Court explained that a defendant is denied his right to confront witnesses against him when a prosecutor presents a co-defendant's confession implicating the defendant at a joint trial and the co-defendant does not testify because the defendant has no opportunity to cross-examine. 391 U.S. 123, 126 (1968). In *Bourjaily v. United States*, the Supreme Court held that admission of a non-testifying co-conspirator's statement against a defendant does not offend the Confrontation Clause as long as the statement satisfies the co-conspirator exception under the relevant rules of evidence. 483 U.S. 171, 182–83 (1987); *see also id.* at 183 ("co-conspirators' statements, when made in the course and in furtherance of the conspiracy, have a long tradition of being outside

the compass of the general hearsay exclusion"); *United States v. Bobb*, 471 F.3d 491, 499 (3d Cir. 2006) ("party admissions and co-conspirator portions of disputed tape recordings are nontestimonial"). And it is well established that application of New Jersey's version of the co-conspirator exception likewise does not offend the Sixth Amendment's guarantee of a defendant's right to confront the witnesses against him. *State v. Savage*, 172 N.J. 374, 402, 799 A.2d 477, 494–95 (2002), citing *Bourjaily v. United States*, 483 U.S. at 183–84.

Here, the state court, applying state evidentiary law applicable to co-conspirator statements made in furtherance of a conspiracy, determined that the introduction of the statements in Lee's letters satisfied the co-conspirator exception to the hearsay rule. As required by *State v. Savage*, 172 N.J. 374, the state court found that there was proof of the conspiracy exclusive of the letters,[8] including testimony that two people were involved in each of the shootings, Melendez and Lee used the alleged getaway car, Melendez went to the holiday party with a gun to clean and hide because "it has a body on it," Melendez used "we" in describing what happened at each of the shootings, and Lee arrived at the party to retrieve the gun that Melendez brought there to hide and clean. *Melendez*, 2014 WL 2895091, at *9. The court further found that the statements in the letters served a current conspiratorial purpose and prompted one who was not a member of the conspiracy, K.G., to respond in a way that furthered the conspiracy. *Id*. Specifically, K.G. did what was asked of him in the letter; that is, he denied he purchased the gun from Lee and denied he selected Lee's photograph from the photo array. *Id.* This testimony benefitted both Lee and Melendez. As to Melendez, witnesses testified that they saw him cleaning a gun that he stated had been used in the shooting of E.H. the previous month.

---

[8]     To this extent, the state court may have, applied a more defendant-favorable requirement of proof *aliunde* the hearsay statements themselves than is constitutionally required. *See Bourjaily, supra.*

*Id.* K.G.'s testimony that Lee was not the person from whom he purchased the gun removed a piece of evidence connecting Lee to the gun, which, in turn, removed a piece of evidence connecting the gun to the crime.

This Court is not permitted to revisit the state court's determination that the statements in Lee's letters were admissible as a matter of state law. *See Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions . . . a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). And deference is owed to the state court's factual finding that the co-conspirator letters furthered the conspiracy. As explained above, the co-conspirator exception is well-established, and the admission of the letters, either considered by themselves or in the aggregate with the other trial evidence, did not violate the Constitution or laws of the United States. Habeas relief is accordingly denied.[9]

---

[9] *See, e.g.*, *Vasquez-Uribe v. United States*, No. CIV.A. 12-6873 SDW, 2014 WL 6388919, at *11 (D.N.J. Nov. 14, 2014) ("the co-conspirator exception to the hearsay rule is firmly enough rooted in our jurisprudence that . . . a court need not independently inquire into the reliability of such statements"); *Lafantano v. Lamas*, No. CV 19-1724, 2020 WL 10574653, at *11 (E.D. Pa. May 27, 2020), *report and recommendation adopted as modified*, No. CV 19-1724, 2021 WL 3171956 (E.D. Pa. July 27, 2021) (noting that habeas court could not revisit state court decision on state evidence issue and recommending denial of habeas relief because "[t]he Supreme Court has held that the admission of a non-testifying co-conspirator's statement against a defendant does not violate the Confrontation Clause"); *Fultz v. Vaughn*, No. CIV. 90-5454, 1992 WL 210270, at *1 (E.D. Pa. Aug. 24, 1992) (denying habeas relief (pre-AEDPA) because "the coconspirator exception to the hearsay rule is longstanding and traditional, and admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability") (internal quotation marks and citations omitted).

### B. Grounds Five, Six, and Seven

Melendez argues that his trial counsel was ineffective because (1) counsel did not take "appropriate steps to [e]nsure that Melendez was adequately represented to defend his case against the State's evidence" and that counsel's lapses "rendered the jury verdict as fundamentally unreliable," DE 17 at 26 (ground five); (2) "counsel failed to subject the State's witnesses to rigorous, or simply competent, cross-examination and failed to call potentially critical witness and challenge evidence," and these "errors, considered cumulatively, amounted to . . . ineffective assistance," *id.* at 28 (ground six); and (3) "counsel failed to interview and prepare alibi witnesses for trial, failed to pursue a dismissal because of a mistrial and failed to explore any challenges to statements, plea agreements and sentencing of Mr. Lee and Mr. Foster," *id.* at 31 (ground seven). For the reasons below, these grounds provide no basis for habeas relief.

> The Appellate Division, in affirming, reviewed the PCR court's findings as follows:
>
> The judge . . . found the State called J.G. as a witness, trial counsel engaged in a lengthy cross-examination, bringing to light inconsistencies between J.G.'s testimony and his statement to the police, and counsel attacked the photo array in which J.G. participated.
>
> The PCR judge found there were no affidavits from Lee and Foster, and trial counsel exercised reasonable strategy in not calling them as witnesses. The judge noted that Lee and Foster, who had pending charges relating to this matter, would have either invoked their Fifth Amendment right not to testify, or their testimony would have damaged the defense by presenting evidence of co-defendants' shared gang membership with defendant. The judge also found that, given the considerable amount of evidence presented against defendant, Lee's and Foster's testimony would not have changed the outcome.
>
> The PCR judge determined defendant did not show that trial counsel's alleged failure to meet with him sufficiently to prepare for trial rose to the level of constitutionally-inadequate representation. The judge noted that trial counsel argued reasonably on defendant's behalf in pre-trial motions, sought a directed verdict at the close of the State's case, cross-examined witnesses, and called alibi witnesses. The judge emphasized there were no affidavits or certifications showing that trial counsel was objectively unreasonable in his trial preparation

and strategy. The judge concluded that defendant failed to establish both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984) to warrant an evidentiary hearing. . . .

*Melendez*, 2017 WL 5617588, at *1–2.

The Appellate Division then declined to address several of Melendez's ineffective assistance arguments—specifically, that counsel's "cross-examination of the State's witnesses was 'woefully inadequate,'" and counsel "failed to pursue a dismissal because of a mistrial, explore any challenges to co-defendants' statements, plea agreements, and sentencing, and use an investigator to investigate his case"—because Melendez "did not present these arguments to the PCR judge and they do not involve the court's jurisdiction or present a matter of great public interest." *Melendez*, 2017 WL 5617588, at *2.

As to Melendez's remaining ineffective assistance arguments—specifically, that "the ineffective assistance of trial counsel deprived [Melendez] of a fair trial and rendered the jury's verdict as fundamentally unreliable" and "trial counsel's errors, considered cumulatively, amounted to the ineffective assistance of counsel"—the Appellate Division "considered [Melendez's] contentions in light of the record and applicable legal principles and conclude[d] they are without sufficient merit to warrant discussion in a written opinion." *Id.* at *2, 4. The court discerned no abuse of discretion in the denial of the PCR petition without an evidentiary hearing, and affirmed "substantially for the reasons set forth in the PCR judge's written opinion." *Id.* at *4. The Appellate Division was "satisfied that trial counsel's performance was not deficient, and defendant provided nothing more than bald assertions to the contrary." *Id.*

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim of ineffective assistance has two necessary components. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of

reasonableness," *id.* at 687–88, meaning he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Second, a petitioner must establish prejudice, i.e., a reasonable probability that the result of the trial would have been different absent the deficient act or omission. *Id.* at 687. Further, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697).

On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue was unreasonable, a higher standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "And while judges may be tempted to second guess defense counsel's decisions, we must keep in mind that 'advocacy is an art and not a science, and . . . strategic choices must be respected in these circumstances if they are based on professional judgment.'" *Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022) (quoting *Strickland*, 466 U.S. at 681). In other words, "counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681–82 (3d Cir. 2006).

In his petition, Melendez simply restates the claims he brought before the state courts in conclusory fashion and he provides no argument, affidavits, or other evidence in support of his conclusory allegations that counsel was ineffective for failing to interview and prepare alibi witnesses; pursue a dismissal; explore challenges to co-defendant statements, plea agreements and sentencings; subject State witnesses to rigorous cross-examination; call potentially critical witnesses; and challenge evidence. Simply characterizing counsel's performance as inadequate does not meet a habeas petitioner's burden. The unsupported and conclusory nature of Melendez's allegations is reason enough to deny habeas relief. *See, e.g.*, *Palmer v. Hendricks*,

592 F.3d 386, 395 (3d Cir. 2010) ("bald assertions and conclusory allegations" cannot establish

an ineffective assistance of counsel claim); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3d

Cir.1991) (finding that the defendant could not "meet his burden to show that counsel made

errors so serious that his representation fell below an objective standard of reasonableness based

on vague and conclusory allegations that some unspecified and speculative testimony might have

established his defense"); *Pierce v. Bartkowski*, No. 11-5265, 2018 WL 4489679, at \*36 (D.N.J.

Sept. 19, 2018) ("Pierce makes no showing that the state courts' rejections of [ineffective

assistance] claims were contrary to established federal law or were based on an unreasonable

application of the facts, as would be required for relief in this Court. Indeed, Pierce does not even

make any arguments why the Appellate Division's determination on these points should be

found erroneous. As such, habeas relief is denied as to these bases.") (citations omitted); *Derry v.

D'Ilio*, No. CIV.A. 14-5037 RMB, 2014 WL 4054026, at \*3 (D.N.J. Aug. 15, 2014) (noting that

court would not consider ineffectiveness claim raised only with "cryptic allegations"; "this Court

cannot act as Petitioner's counsel by searching the volumes of his trial and appellate transcripts

in the hope of locating any sentence" in support of petitioner's bald assertion that counsel

conducted "ineffective cross examination").

      If I were to consider Melendez's claims, I would find that the state courts' determination

that counsel was not constitutionally ineffective was not contrary to clearly established federal

law. The PCR court reasonably found that trial counsel's decision not to call Lee and Foster as

witnesses was not objectively unreasonable, because those witnesses had pending double murder

charges and would have either invoked their Fifth Amendment right not to testify, or their

testimony would have been damaging to Melendez's defense because it would have opened an

opportunity for the State to corroborate the co-defendants' relationship as gang members. DE 13-

3 at 11 (PCR Court opinion); *Melendez*, 2017 WL 5617588, at \*2. I would add that these witnesses might have adopted the alternative strategy of shifting blame from themselves to Melendez. The PCR court also reasonably determined that trial counsel argued reasonably on Melendez's behalf in pre-trial motions, sought a directed verdict at the close of the State's case, cross-examined witnesses, and called alibi witnesses. *Id.*; *see also* DE 13-13 (PCR court noted that "[w]ithout an affidavit or certification providing otherwise, there is nothing to say that defense counsel was objectively unreasonable in his preparation and presentation at trial."). As the state court reasonably found no evidence of deficient performance or prejudice, Melendez's arguments—that the errors he alleges, considered cumulatively, amounted to ineffective assistance and rendered the jury verdict fundamentally unreliable—do not warrant habeas relief. *See United States v. Herrera-Genao*, 419 F. App'x 288, 296 (3d Cir. 2011) ("Herrera-Genao complains only of the cumulative effect of the preceding claims; because we have found no error regarding those claims, Herrera-Genao's claim of cumulative error also fails."); *United States v. Tiangco*, 225 F. Supp. 3d 274, 290 (D.N.J. 2016) ("I have considered the defendant's claims of error cumulatively. Individually, they do not raise a substantial possibility of prejudice. Taken together, they likewise do not suggest any prejudice, unfairness, or evidentiary insufficiency that would warrant a new trial or judgment of acquittal.").

## C.  Ground Eight

Melendez argues that his sentence—effectively imprisonment for life, at 98 years in custody with a 79.9–year period of parole ineligibility—is excessive. DE 1 at 13. He asserts (1) the trial court's "heavy reliance" on his prior criminal record is "misplaced" because "[w]hile he was in no way a first offender, a single probationary term does not support the aggravating factor of prior record, certainly not enough to justify a life without parole sentence," DE 17 at 32; (2)

"even if [he] was guilty of these offenses, he was guilty only as an accomplice," *id.* at 33; and (3) "while some consecutive sentencing was arguably appropriate given that two victims were killed, six is excessive" because "[a]ll of the actions of which [he] was convicted arose from the same incident, namely the killing of his friend." *Id.* at 34. Finally, Melendez states that "the . . . Edariel Melendez today is not the same Edariel Melendez he was when he was 19 years old when the offense occurred" 15 years ago, and "a de facto life without parole sentence imposed on a juvenile is disproportionately worse, since a juvenile will arguably be in custody much longer that an adult if sentenced to life without parole." *Id.* at 37.

The last reasoned state court decision addressing these grounds—the Appellate Division's opinion on direct appeal—rejected Melendez's sentencing argument. *Melendez*, 2014 WL 2895091, at *10–12. The court reviewed the applicable law and the trial judge's reasoning in imposing the challenged sentence and analyzed Melendez's arguments regarding aggravating factors, sentencing disparities, and consecutive terms as follows:

> "In sentencing, trial judges are given wide discretion so long as the sentence imposed is within the statutory framework." *State v. Dalziel,* 182 N.J. 494, 500 (2005). Where the court engages in the appropriate balancing of aggravating and mitigating factors before imposing sentence and the court's findings relative to those factors are supported by credible evidence in the record, the sentence imposed will be upheld unless it is so clearly unreasonable as "to shock the judicial conscience." *Id.* at 501 (quoting *State v. Roth,* 95 N.J. 334, 364–65 (1984)). Furthermore, in crafting an appropriate sentence, the focus must remain on the offense, not the offender. *Roth, supra,* 95 N.J. at 367. "[T]he sentence imposed must reflect the Legislature's intention to focus on the degree of the crime itself as opposed to other factors personal to the defendant." *State v. Hodge,* 95 N.J. 369, 377 (1984).
>
> In determining the appropriate sentence, the court must decide whether there is a preponderance of aggravating or mitigating factors. *State v. Abdullah,* 184 N.J. 497, 506–07 (2005). When determining parole ineligibility, by contrast, the court must be "clearly convinced that the aggravating factors substantially outweigh the mitigating factors." *Id.* at 511. The different standard reflects the fact that "[p]eriods of parole ineligibility are the exception and not the rule. They are not to be treated as routine or commonplace. *State v. Martelli,* 201 N.J. Super. 378, 382 (App. Div.1985); *see also State v. Yarbough,* 195 N.J. Super. 135, 142–43 n.3

(App. Div.1984) ("Since the judge did not make any findings in support of those terms, we may infer that he regarded that parole ineligibility terms can be attached to presumptive terms as a matter of course. Such a view is clearly erroneous."), *modified on other grounds and remanded,* 100 *N.J.* 627 (1985), *cert. denied,* 475 U.S. 1014 (1986).

"[W]here mitigating factors are amply based in the record before the sentencing judge, they must be found. . . . [T]hey may be accorded such weight as the judge determines is appropriate." *Dalziel, supra,* 182 N.J. at 504–05; *Roth, supra,* 95 N.J. at 365. A sentence should not "be based upon a quantitative analysis" of the factors because they "are not interchangeable on a one-to-one basis." *Roth, supra,* 95 N.J. Super. at 368. "The proper weight to be given to each is a function of its gravity in relation to the severity of the offense." *Ibid.*

Upon review, "[t]he test is not whether . . . [this] court would have reached a different conclusion on what an appropriate sentence should be; it is rather whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review." *State v. Roach,* 146 N.J. 208, 236, *cert. denied,* 519 U.S. 1021 (1996) (citations and internal quotation marks omitted).

Here, Judge Perfilio found aggravating factors three, six, and nine, N.J.S.A. 2C:44–1(a)(3), (6), and (9), stating "there is a risk of [reoffending] because . . . defendant had one prior indictable[ ], two prior juvenile offenses, . . . there is . . . a criminal record and . . . there's . . . a need to deter this type of behavior from defendant and from everybody else in like position." He found no mitigating factors. After weighing the aggravating and mitigating factors, the judge concluded the aggravating factors "clearly, convincingly, and substantially" outweighed the nonexistent mitigating factors.

Defendant argues that his criminal record as an adult is negligible. However, according to his pre-sentence report, defendant's prior conviction/adjudications include drug and weapons offenses. Also, at the time of sentencing, defendant was awaiting sentencing on two other drug convictions. Furthermore, defendant violated his probation both as an adult and a juvenile, suggesting the likelihood of reoffending. Defendant further argues his sentence is widely disparate from that of his co-defendant B.L., especially given that he was only the accomplice, not the actual shooter.

To avoid excessive disparity in sentencing multiple defendants, "[t]he trial court must determine whether a co-defendant is identical or substantially similar to the defendant regarding all relevant sentencing criteria." *State v. Roach,* 167 N.J. 565, 569 (2001). Those are not the circumstances here as between defendant and B.L. primarily because B.L.'s twenty-three-year aggregate sentence resulted from a negotiated plea agreement. The agreement spared the State the expense of a trial and the victims and their families the ordeal of yet another trial.

Defendant additionally argues that the imposition of six consecutive sentences is excessive and does not meet the guidelines set forth in *Yarbough, supra,* 100 *N.J.* at 627. Factors to be considered by the trial court in determining whether to sentence a defendant to consecutive or concurrent sentences include whether or not:

> (a) the crimes and their objectives were predominantly independent of each other;

> (b) the crimes involved separate acts of violence or threats of violence;

> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

> (d) any of the crimes involved multiple victims;

> (e) the convictions for which the sentences are to be imposed are numerous.

> [*Id.* at 644]

The trial court concluded consecutive terms were appropriate because defendant was not allowed "free crimes" where there were "two different people who were murdered and [on] different days" as well as two other people, Q.A. and I.D., who were also injured. The court also found "the crimes involved separate acts of violence. They were committed at different times, in different places, rather than being committed so closely in time to be a single act and crimes that involve multiple victims." Defendant argues that "all of the actions of [sic] which [he] was convicted arose from the same incident, namely the killing of his friend."

The trial judge was not obligated to consider the purported sole motive for the crime in determining the appropriate sentence, rather he was charged with focusing upon the number of times crimes were committed and when. *State v. Carey,* 168 N.J. 413, 422–23 (2001). Considered under this standard, the sentence imposed does not shock the judicial conscience.

*Melendez*, 2014 WL 2895091, at *10–12.

A federal court's ability to review state sentences is limited to challenges based on "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, federal courts may not review a challenge to a state court's discretion at

sentencing unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984); *see also* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67. In *United States v. Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014), the Third Circuit reviewed the standard applicable to an Eighth Amendment excessive sentence challenge:

> The Supreme Court has explained that the "Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to non-capital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290–92 (1983). In conducting this analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes. *United States v. Rosenberg*, 806 F.2d 1169, 1175 (3d Cir. 1986); *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment . . . because we accord substantial deference to Congress, as it possesses broad authority to determine the types and limits of punishments for crimes.").
>
> The first factor acts as a gateway prong to the proportionality inquiry. The Eighth Amendment, after all, only forbids sentences that are "grossly disproportionate" for a conviction for the crime involved. If the defendant fails to demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge is at an end. Successful proportionality challenges in non-capital cases are "exceedingly rare." *Ewing*, 538 U.S. at 21 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).

*Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014).

Here, Melendez fails to demonstrate a gross imbalance between the crimes of which he was convicted and the sentence he received. Melendez has not shown—and does not argue—that his sentence was outside the range provided by state law, and the record demonstrates proportionality between Melendez's participation in the senseless murder of two innocent people—a 13-year-old child; and a husband, father, and grandfather who had the misfortune of

sharing a two-family house with Melendez's intended target—in retaliation for gang-related violence and the sentence received. *See* DE 13-42 (Sentencing Tr.) at 16.[10]

Under these circumstances, where Melendez's sentence falls withing the range provided by state law and his arguments relate to the severity of the sentence imposed, Melendez's excessive sentence claim is not cognizable on habeas review. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) (when a state "sentence [is] within the limits set by statute, its severity would not be grounds for [habeas] relief"); *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42-43 (3d Cir. 1984) (challenge to state court's sentencing discretion is not cognizable in federal habeas); *Hines v. Powell*, No. 19-19252, 2022 WL 2833831, at *4 (D.N.J. July 19, 2022) ("As Petitioner has not shown that his sentence was outside the range provided by state law, has not provided an independent constitutional violation which would permit a challenge to his sentence, and because the Appellate Division found that Petitioner's sentence comported with state law, Petitioner's excessive sentence claim fails to set forth a valid basis for habeas relief."); *Yorio v. New Jersey*, No. 10-5335, 2012 WL 3133948, at *3 (D.N.J. July 31, 2012) (excessive sentence claim not cognizable on habeas review where "the Appellate Division reviewed Petitioner's sentence and determined that he was properly sentenced, and that the sentence was

---

[10] In sentencing Melendez, the trial judge advised him that "[t]aking a life under circumstances such as this where the motive is to try to get back for somebody else taking a life should not be . . . acceptable in any civil society and will not be accepted in New Jersey and it shouldn't be accepted anywhere in the world." DE 13-42 at 9. In her statement at sentencing, E.H.'s mother told the court: "[M]y son was a good kid. He never got in any trouble. He did good in school. He was in football. He was elected treasurer and president of his school. He always found a way to make people laugh. . . . And to have his life taken away from him in this tragic way, it's inexcusable, sir. . . . My son . . . was shot down like an animal and left there to die. . . . [M]y child is no longer here." *Id.* at 11. In a letter to the court, C.P.'s wife stated: "In the death of my husband, I lost my best friend, the love of my life . . . . He lost his life. Why? Why is life so unimportant that with the click of a finger and a split second a wonderful – wonderful human being with a family and with so much living yet to live was gone forever? I know that these individuals cannot return to me what was lost. We lost a friend, a husband, a father, and a grandfather. I want them, I want Mr. Melendez to know that my husband's name was Celso Pedra, in capitals. . . . [N]o one else should have to live with the nightmare that I live my day-to-day life."

not 'manifestly excessive or unduly punitive and does not constitute an abuse of discretion'"); *Smith v. Kerestes*, Civ. 08-0061, 2009 WL 1676136, at *16 (E.D. Pa. June 15, 2009) (rejecting petitioner's claim that his state sentence was excessive because "absent a Constitutional violation, a federal court has no power to review a sentence in a habeas corpus proceeding unless it exceeds statutory limits"); *Logmans v. Moore*, No. 02-5622, 2005 WL 1106336, at *19 (D.N.J. Apr. 29, 2005) ("even if this Court was of the opinion that the sentence was excessive . . . it is well established that the severity of the defendant's sentence alone constitutes no ground for [habeas] relief").

Additionally, Melendez's argument that the sentence imposed upon him "as a juvenile" violates the Eighth Amendment is without merit because, *inter alia*, Melendez was an adult at the time of the murders. *See Holloway v. Bush*, No. 18-905, 2019 WL 2323821, at *12 (M.D. Pa. Apr. 10, 2019), *report and recommendation adopted*, 2019 WL 2296527 (M.D. Pa. May 30, 2019) ("Holloway renews a twofold challenge to the sentence imposed here, attacking it as an unconstitutional exercise of sentencing discretion and further contending that imposition of a life sentence upon the petitioner, who was allegedly 18 years and 6 months old at the time of this killing, violated the Eighth Amendment. While the sentence meted out to Holloway was doubtless severe, neither of the excessive sentencing claims which he now advances afford the petitioner a right to federal habeas corpus relief."). The trial judge knew Melendez was young and acknowledged it at sentencing. *See* DE 13-42 at 17 ("No judge likes to send somebody away as young as you are for a long period of time, it doesn't make me happy, it doesn't make me feel good about myself, but I don't have a choice. I really don't have a choice. We live in a civil society. It's the only thing I can do and make others be aware that this will happen to every single person who gets in the situation that you're in, without exception.")

Melendez's remaining arguments regarding the application of aggravating factors, consecutive sentences, and alleged sentencing disparities relate to the trial court's exercise of its sentencing discretion pursuant to state law and thus are questions of state law that are not reviewable in a federal habeas proceeding. *See Beckett v. Powell*, No. CV 19-14559, 2022 WL 884376, at *5 (D.N.J. Mar. 25, 2022) ("Petitioner's challenges to his sentencing 'for failure to properly weigh the aggravating and mitigating factors [are] not reviewable here.'") (quoting *Jenkins v. Bartkowski*, No. 10-4972, 2014 WL 2602177, at *21 (D.N.J. June 11, 2014)); *Hinton v. Att'y Gen. of State of N.J.*, No. CV 18-14508, 2020 WL 6482932, at *11–12 (D.N.J. Nov. 4, 2020) (Petitioner's "only argument is that his sentence is excessive because the state court improperly weighed the aggravating and mitigating factors. However, this in and of itself does not appear to state a constitutional claim.") (collecting cases); *Gilmore v. Ricci*, No. 06-4953, 2007 WL 3256706, at *20 (D.N.J. Nov. 2, 2007) (excessive sentence claim based on imposition of consecutive sentences not reviewable on habeas where "the imposition of consecutive sentences fits within the guidelines of *State v. Yarbough*"; petitioner "committed multiple offenses . . . in a single incident"; and "[i]mposition of concurrent sentences would frustrate the notion that there be no free crimes"); *Mahoney v. Bostel,* 366 F. App'x 268 (3d Cir. 2010) (mere allegation of sentencing disparity insufficient to justify habeas relief); *D'Amico v. Balicki*, No. 11-4168, 2012 WL 3925881, at *12 (D.N.J. Sept. 6, 2012) (petitioner's "assertion that his sentence is unduly disproportionate to those given to his co-defendants presents only a possible error of state law") (quotations and citation omitted).

Even if such questions were reviewable, however, I would find that the record supports the sentence. At the most general level, a life sentence (or the equivalent) for these heinous, senseless crimes does not offend the judicial conscience. The trial court's application of the

aggravating factor related to Melendez's criminal history was reasonable where, as the Appellate Division noted, Melendez's prior offenses included drug and weapons offenses and Melendez violated his probation both as an adult and a juvenile. *Melendez*, 2014 WL 2895091, at *11. The trial judge considered the *Yarbough* factors and reasonably determined that the crimes, committed at different times in different places and involving multiple victims, involved separate acts of violence and thus warranted consecutive sentences. DE 13-42 at 14. Finally, the Appellate Division reasonably determined that Melendez and Lee did not have substantially similar sentencing criteria, primarily because Lee's sentence resulted from a negotiated plea agreement, and therefore Melendez's argument regarding excessive sentencing disparity was without merit. *Melendez*, 2014 WL 2895091, at *11.

On this record, the Appellate Division's findings that Melendez's sentence comported with state law and his sentence does not shock the judicial conscience are not contrary to or an unreasonable application of Supreme Court precedent. As Melendez has not provided an independent constitutional violation permitting a challenge to his sentence, ground eight does not set forth a valid basis for habeas relief and must be denied.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322,

327 (2003). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## VI.    CONCLUSION

For the foregoing reasons, Melendez's petition is denied with prejudice on the merits and no certificate of appealability shall issue.  An appropriate order follows.

DATED:  November 8, 2022

/s/ Kevin McNulty

_____
KEVIN MCNULTY
United States District Judge